IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Seneca County Board of Health,

Case No. 3:24 CV 912

Plaintiff,

MEMORANDUM OPINION

-vs-

JUDGE JACK ZOUHARY

WIN Waste Innovations of Seneca
 County LLC,

Defendant.

### INTRODUCTION

Landfill erosion occurs when rain and runoff wear away the "cover soil" placed over buried waste.  Ohio law requires landfill operators to prevent and repair that erosion.  Plaintiff Seneca County Board of Health ("the Board") alleges Defendant WIN Waste Innovations of Seneca County LLC ("WIN Waste") violated Ohio solid-waste rules by failing to protect cover soil, control surface water, correct erosion, and accurately complete daily inspection forms.

The Board filed this suit seeking injunctive relief.  The parties have narrowed the case, dismissing two counts with prejudice, and stipulating that the remaining claims were limited to alleged violations occurring during 2023–2025 (Docs. 41–42).  WIN Waste now moves for summary judgment, arguing no injunctive relief is available because the alleged violations have been corrected (Doc. 48).  The Board opposes, relying principally on the text of Ohio Revised Code ("R.C.") § 3734.10, and two additional observations of erosion in April 2026 (Doc. 51).  WIN Waste replied (Doc. 52).

## BACKGROUND

In February 2019, WIN Waste acquired a roughly 220-acre solid-waste landfill that has operated in Seneca County since 1970 (Docs. 48 at 4–5; 51 at 11–12).  The landfill consists of two "mountains of waste" -- a North Hill that has been filled to capacity and capped with soil and grass, and a South Hill that still accepts waste (Doc. 8 at 3).  It accepts a substantial amount of demolition debris, and as that material decomposes, it generates gases that include methane and hydrogen sulfide, which have caused "severe odor complaints in the surrounding area" (Doc. 51 at 2).

Ohio regulates landfills through R.C. Chapter 3734 and rules adopted by the Ohio Environmental Protection Agency ("Ohio EPA").  The statutory scheme is designed to ensure landfills are located, maintained, and operated "in a sanitary manner so as not to create a nuisance, cause or contribute to water pollution, [or] create a health hazard."  R.C. § 3734.02(A).  Ohio EPA may approve a local health district to serve as the primary inspection and enforcement authority for the rules.  *See* R.C. § 3734.08; O.A.C. 3745-37-08.  The Board is the approved health district for this landfill and conducts routine inspections (Doc. 51 at 2).  Ohio EPA also retains oversight authority and independently inspects the landfill.

Landfill operators use daily, intermediate, and final "cover soil."  Daily cover is placed over the active "working face" of trash at the end of each operating day.  Final cover permanently caps areas that have reached their final grade and will no longer accept waste.  Intermediate cover is temporary soil placed over areas that may accept more waste later, but will not do so for at least 30 days (Docs. 48 at 5; 48-4 at 2–3).  Intermediate cover limits water infiltration, reduces erosion, and helps separate buried waste from the surrounding environment (Doc. 51 at 2–3).  Generally, the rules require at least twelve inches of intermediate cover.  *See* O.A.C. 3745-535-630(B).

2

The cover rules at issue here address erosion and surface water.  An operator must protect intermediate cover from erosion, employ surface-water controls that minimize erosion and infiltration, and correct conditions causing erosion or ponding.  *See* O.A.C. 3745-535-630(B), O.A.C. 3745-535-650.  Erosion itself is not automatically a violation.  Rather, the dispute here is whether WIN Waste used and maintained measures the rules require.

This landfill is also subject to a 2019 Partial Consent Order entered after problems under prior ownership.  Among other obligations, that Order requires 24 inches of intermediate cover and continued compliance with Ohio's solid-waste laws and rules (Doc. 48-1 at 2–3).  WIN Waste states it has since invested more than $100 million in gas collection, odor control, emissions-control technology, and related infrastructure (*id.* at 3).

The three remaining counts concern the South Hill from the Fall of 2023 through May 2024, daily "Form 3" inspection records for January and February 2024, and five inspection dates in the Summer of 2025, ending August 7, 2025 (Doc. 42 at 1–2).  Specifically, the Board claims WIN Waste failed to: protect intermediate cover from erosion, use surface-water controls that minimized erosion, correct conditions causing erosion, and accurately complete required inspection records.

In December 2025, months after these alleged violations, Ohio EPA inspected the entire landfill, including the South Hill.  Four inspectors traversed the landfill and found it in substantial compliance with the governing statutes, permits, and consent orders (Docs. 48-2 at 100; 48-3 at 64–70; 51-1 at 355–356).  The Board points to its own inspections on April 15 and April 28, 2026.  According to the Board, those observations show the erosion-control problems continue, and an injunction is needed (Doc. 51 at 8–10).

## LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Federal Civil Rule 56(a).  This Court views the evidence in the light most favorable to the nonmovant and draws reasonable inferences in its favor.  *Spirit Airlines, Inc. v. Nw. Airlines, Inc.*, 431 F.3d 917, 930 (6th Cir. 2005).  A dispute is genuine only if a reasonable factfinder could return a verdict for the nonmovant, and it is material only if it could affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## DISCUSSION

**Injunctive relief is not warranted.**

R.C. § 3734.10 provides that a court "shall grant preliminary and permanent injunctive relief upon a showing that the person against whom the action is brought has violated, is violating, or is threatening to violate" Ohio's solid-waste rules.  The Board emphasizes the words "has violated." The statute identifies the conduct that may support an enforcement action, including a past violation. But that does not answer what relief remains available.  Nor can a court issue an injunction when there is nothing left to prevent, correct, or restrain.

Ohio decisions applying statutory-injunction provisions recognize this distinction.  Statutory injunctions protect the public rather than compensate a private litigant.  *State ex rel. Scadden v. Willhite*, 2002 WL 452472, at *9 (Ohio Ct. App. 2002); *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St. 2d 51, 56 (1978).  And even when a statute dispenses with the traditional showing of irreparable harm, the resulting order must remain reasonable under the circumstances and serve the statutory purpose.  *State ex rel. Petro v. RSV, Inc.*, 2006-Ohio-376, ¶ 37 (Ohio Ct. App. 2006).

4

Cases applying R.C. Chapter 3734 echo this theme.  R.C. § 3734.10 supplies a means to halt or prevent violations of the solid-waste laws, which are designed "to protect human health and safety and the environment."  *State ex rel. Celebrezze v. Env't Enter., Inc.*, 1985 WL 7845, at *4 (Ohio Ct. App. 1985); *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trs.*, 64 Ohio St. 3d 385, 389 (1992).  Thus, an injunction is unnecessary if it would not protect the public from any existing condition or demonstrated threat.  *State ex rel. Williams v. Skinner*, 1979 WL 208823, at *1–2 (Ohio Ct. App. 1979).

Here, the Board seeks prospective relief only, not civil penalties or damages.  Yet it identifies no condition from the remaining claims that an order could repair.  WIN Waste has already placed roughly forty feet of additional waste over the former area, installed new intermediate cover, seeded it, added "an extensive network of [stormwater] diversion berms," and used coarse stone to reduce water velocity (Docs. 48-3 at 7–9; 48-4 at 4).  These are among the same measures the Board's expert identified as proactive erosion-prevention infrastructure (Doc. 51-1 at 150).  Most important, the Board's own expert testified that soil roughening should be combined with seeding or planting (*id.* at 42, 154).  That too has taken place.  Also, the allegedly deficient daily inspection reports occurred more than two years ago, and those forms have long since been completed (Docs. 46-2 at 10; 52 at 4).  Even assuming every alleged violation occurred, an injunction directed at past and now cured events would serve no purpose.

The Board's expansive reading would require an injunction whenever a plaintiff proves any past violation, even after the condition has been corrected and no meaningful prospective command remains.  Nothing in R.C. § 3734.10 requires that result.

**The remaining claims are moot.**

Federal courts decide live controversies, not disputes about conduct for which no effective relief remains.  A case becomes moot when intervening events have "completely and irrevocably eradicated the effects of the alleged violation" and there is "no reasonable expectation" that the violation will recur.  *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).  When both conditions are met, neither party retains a legally cognizable interest in the underlying dispute.  *Id.*  The party asserting mootness bears the burden.  *Id.*

That rule can apply even when the challenged conduct ended after suit was filed.  Voluntary cessation does not ordinarily moot a case unless subsequent events make it clear that the conduct cannot reasonably be expected to recur.  *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).  But a court must still ask whether any present controversy remains and whether effective relief can be granted.  *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023).  Its judgment must resolve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character."  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted).

WIN Waste meets that burden on this record.  First, the effects of the stipulated erosion and water-control conditions have been eliminated.  As noted above, WIN Waste has placed proactive infrastructure to minimize erosion.  And the December 2025 Ohio EPA whole-facility inspection found substantial compliance (Doc. 48-2 at 100).  The Board points to no remaining physical effect from the specific conditions identified in Counts One, Two, or Four.

Second, the evidence does not support a reasonable expectation that those same violations will recur.  The Board's own expert testified: "It would be very odd for someone to come in, install surface water control structures . . . and then take them out, only to reinstall them later in time.  That doesn't make sense" (Doc 51-1 at 56).  More importantly, the record shows the requested measures

6

are now in place.  A theoretical possibility that erosion may occur somewhere on a 220-acre landfill is not a reasonable expectation that WIN Waste will repeat the same alleged regulatory failures.

Third, the April 2026 observations do rescue this suit.  This Court does not disregard them merely because they post-date the Stipulation.  Even considered on their own terms, they are insufficient.  The Board fails to connect them to the same location, cause, or allegedly deficient erosion controls on the South Hill.  And the Board's expert did not inspect the April conditions or offer an opinion that the remedial measures installed after the stipulated events were absent or ineffective (Docs. 48-2 at 12; 51-1 at 56).  Those observations may support continued regulatory oversight, but they do not create a genuine dispute that the specific, past violations litigated here remain unremedied or are reasonably likely to recur.

Finally, Count Six hits the same roadblock.  That Count concerns daily inspection forms from January and February 2024 (Doc. 42 at 2).  The Ohio EPA creates the rules requiring landfill operators to inspect their landfill, and decides what and how they must inspect.  An Ohio EPA representative testified that erosion alone need not be recorded on Form 3, though corrective action does (Doc. 48-2 at 101).  The Board "believes both are required" (Doc. 51 at 12), but that belief cannot create a material dispute.

The Board also offers no evidence of an ongoing Form 3 deficiency tied to those records and identifies no prospective correction this Court could order.  Whether WIN Waste should have recorded erosion, corrective action, or both, during those two months does not change the available remedy.  The period has passed, and there is no live recordkeeping condition before this Court (Docs. 46-2 at 10; 52 at 4).  A decision on the historical disagreement would not affect the present legal interests.  *Macedo v. Zeyer*, 2012 WL 3112395, at *2 (N.D. Ohio 2012).

Because the completed remedial work eliminated the effects of the stipulated conditions, and because the April 2026 evidence does not show a reasonable expectation of recurrence, no live claim for injunctive relief remains.

**The requested injunction does not meet Civil Rule 65 requirements.**

There is a separate problem for the Board.  An injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."   Federal Civil Rule 65(d)(1).  Those requirements prevent uncertainty and avoid contempt proceedings based on an order whose reach is unclear.  *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  An order that simply commands a party to obey the law is ordinarily too vague and too broad.  *Perez v. Ohio Bell Tel. Co.*, 655 F. App'x 404, 410–11 (6th Cir. 2016).

An order compelling WIN Waste to obey the law appears to be exactly what the Board seeks. When Julie Richards, Board Commissioner, was asked "what specifically" she seeks as a remedy, she stated that she wanted this Court to "order [WIN Waste] to comply with the Ohio Administrative Code" (Doc. 48-2 at 68).  When Board Members Robert Podach and Clay Wolph were asked, each replied they did not know (*id*. at 55, 61).  It appears the Board never discussed what this lawsuit sought to achieve.

The Board is more specific in its Opposition, claiming that WIN Waste has not installed any "proactive erosion prevention infrastructure" in compliance with Ohio's solid-waste rules (Doc. 51 at 9–10).  But that broad critique could mean erosion blankets, soil roughening, temporary seeding, silt fences, filter socks, diversion berms, or some combination of those measures (*see* Doc. 51-1 at 150).  The Board fails to identify which measure, above and beyond those already taken, must be installed, where it must be installed, how long it must remain, or what objective result would establish compliance.

8

Importantly, WIN Waste already uses the principal measures the Board identifies.  An order to seed the cover or install diversion berms would duplicate completed work.  A broader order to maintain adequate erosion controls would merely restate the governing regulations.  Neither falls within the permitted parameters of Rule 65.

CONCLUSION

R.C. § 3734.10 does not allow this Court to pile a general injunction on top of the ongoing regulations and oversight already in place.  These violations have long been remedied and are not reasonably likely to reoccur.  And an order directing WIN Waste to "comply with Ohio law" would be an impermissible injunction.  Defendant's Motion for Summary Judgment (Doc. 48) is granted.

IT IS SO ORDERED.

s/ <em>Jack Zouhary</em>

JACK ZOUHARY
U. S. DISTRICT JUDGE

August 12, 2026